IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN MCMULLIN, MICHELLE MCMULLIN, GBW REALTY, INC., and GRACE & THE DUDES, LLC, | HONORABLE JEROME B. SIMANDLE |
|           Plaintiffs, | Civil Action No. 14-7537 (JBS/KMW) |
|    v. | |
| HARLEYSVILLE INSURANCE COMPANY, INC., THE HARTFORD INSURANCE COMPANY OF THE MIDWEST, CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NUMBER CSWBIFIC0782, BROOKS INSURANCE AGENCY, and THE DEMONACO AGENCY, INC., | **OPINION** |
|           Defendants. | |

APPEARANCES:

Keith C. Northridge, Esq.
Borowsky & Borowsky, LLC
59 Avenue at the Commons
Shrewsbury, NJ 07702
    Counsel for Plaintiffs

Jay Barry Harris, Esq.
Fineman Krekstein & Harris, P.C.
1801 Market Street, Suite 1100
Philadelphia, PA 19103
    Counsel for Defendant Brooks Insurance Agency

Alyse Berger Heilpern, Esq.
L'Abbate, Balkan, Colavita, & Contini, L.L.P.
100 Eagle Rock Avenue, Suite 220
East Hanover, NJ 07936
    Counsel for Defendant the DeMonaco Agency, Inc.

**SIMANDLE, Chief Judge:**

## I.   INTRODUCTION

In this insurance coverage, professional negligence, and indemnification action, the parties assert three distinct series of claims.  In the coverage aspects of this litigation, Plaintiffs Brian McMullin, GBW Realty, Inc., and Grace & The Dudes, LLC (collectively, "Plaintiffs") allege that Defendants Harleysville Insurance Company, Inc. (hereinafter, "Harleysville"), the Hartford Insurance Company of the Midwest (hereinafter, "Hartford"), and Certain Underwriters at Lloyd's of London (hereinafter, "Lloyds") breached Plaintiffs' flood insurance, businessowners, and property insurance policies by partially declining or outright denying their claims for damages to their commercial (rental) property during Hurricane Sandy.[1] With respect to the professional negligence component of this litigation, Plaintiffs allege that their insurance broker, the DeMonaco Agency, Inc. (hereinafter, "DeMonaco"), and its wholesaler, Brooks Insurance Agency (hereinafter, "Brooks"), breached their fiduciary obligations and committed professional negligence, by recommending the disputed policies and failing to

---

[1] Although the Complaint lists Michelle McMullin as a named Plaintiff, the Complaint itself includes no allegations involving Ms. McMullin, and otherwise identifies Brian McMullin as the only individually named insured on the various insurance policies.  (See, e.g., Compl. at ¶¶ 3, 8.)

process Plaintiffs' premium payments.  Finally, in the indemnification aspect of this action, Brooks and DeMonaco claim entitlement to contractual indemnification vis-à-vis each other under the provisions of their Broker-Wholesaler Agreement.

In the midst of pre-trial discovery,[2] the Court now confronts two distinct series of dispositive motions.  First, Brooks and DeMonaco separately move for summary judgment on the grounds that Plaintiffs' failure to produce affidavits of merit within the 120-day period provided by the New Jersey Affidavit of Merit statute, N.J.S.A. §§ 2A:53A-26, -29, requires that the claims against them be dismissed with prejudice.[3]  [See Docket Items 60 & 62.]  Plaintiffs, by contrast, take the view that the nature of their allegations render the affidavit of merit requirement inapplicable, and alternatively, that the District-wide stay of "further litigation" in all Hurricane Sandy actions tolled (explicitly and/or equitable principles) the statutory time limitations.[4]

---

[2] The most-recent Scheduling Order set a September 16, 2016 deadline for the conclusion of pretrial factual discovery, and directed that dispositive motions be filed by no later than January 20, 2017.  [See Docket Item 101 at ¶¶ 1 & 5.]
[3] Plaintiffs, in turn, cross-move for summary judgment, claiming their own entitlement to a declaration deeming the now-served affidavit of merit timely, or deeming their untimely filing excused by equitable considerations.  [See Docket Items 76 & 78.]
[4] In the wake of a Federal Emergency Management Agency (hereinafter, "FEMA") policy "of intensive negotiation and settlement efforts in [Hurricane] Sandy flood cases," on March

Second, Brooks seeks summary judgment on its claims for contractual indemnification against DeMonaco, and on DeMonaco's cross-claim for contractual indemnification against Brooks. [See Docket Item 69.]  More specifically, Brooks argues that the "any and all claims" indemnification provision plainly captures Plaintiffs' single professional negligence claim against it, and submits that the one-way indemnification provision provides "no basis" for DeMonaco to claim indemnification.  (Brooks' Indemnification Br. at 3-9; see also Brooks' Indemnification Reply at 3-8.)  DeMonaco, by contrast, argues for a narrower interpretation of the indemnification clause, and specifically claims that the provision only indemnifies Brooks from the harm associated with, or caused by, DeMonaco's actions, and not the independent acts of negligence alleged against Brooks here. (See DeMonaco's Indemnification Opp'n at 3-8.)  As a result, Brooks takes the view that any resolution of the indemnification issues would at this time be premature, because "no determination" has been made concerning Brooks' own negligence (if any).  (Id. at 2.)

---

13, 2015, this District temporarily stayed "further litigation" of flood cases, in an effort "to conserve time and resources of the litigants, the Court, the arbitrators and mediators." [Docket Item 1 in Miscellaneous Action No. 15-700; see also Docket Items 1, 2, & 3 in Miscellaneous Action No. 15-800.]

Against that backdrop, in resolving the parties' summary judgment motions, the Court must address two unconnected inquiries. First, the Court must, in light of the District-wide stay, consider the effect of Plaintiffs' untimely compliance with the affidavit of merit requirements. Second, the Court must consider the scope, meaning, and effect of the indemnification provision between Brooks and DeMonaco.

For the reasons that follow, the affidavit of merit summary judgment motions by Brooks and DeMonaco will be denied, and Plaintiffs' related cross-motions relative to the affidavit of merit will be granted. Finally, Brooks' separate motion for summary judgment on the contractual indemnification claims will be granted in part and denied without prejudice in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND[5]

### A. Broker-Wholesaler Agreement and Indemnification

---

[5] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff, as the party opposing summary judgment. The Court disregards, as it must, those portions of the parties' statements of material facts that lack citation to relevant record evidence (unless admitted by the opponent), recites factual irrelevancies, and/or recounts information that the Court struck from the summary judgment record. See generally L. Civ. R. 56.1(a); see also Kemly v. Werner Co., ___ F. Supp. 3d ___, 2015 WL 8335030 (D.N.J. Dec. 8, 2015) (disregarding portions of the parties' statements of material facts on these grounds); Jones v. Sanko Steamship Co., Ltd., ___ F. Supp. 3d ___, 2015 WL 8361745 (D.N.J. Dec. 8, 2015) (same). In light of the narrowness (and largely procedural nature) of the issues raised in the various summary judgment motions, the material factual record here proves remarkably brief.

**Provision**

On November 17, 2009, Brooks and DeMonaco entered into a Broker-Wholesaler Agreement, which authorized Brooks (as the "Wholesaler") "to obtain quotes and/or place a policy of insurance" on behalf of DeMonaco (as the "Broker"). (Brooks' Indemnification SMF at ¶ 1; DeMonaco's RSMF at ¶ 1; see also Ex. A. to Brooks' Indemnification SMF at ¶ 2.)  In exchange for access to Brooks' wholesale insurance rates, DeMonaco agreed, among other things, [1] to solicit and receive insurance proposals, and to inform Brooks "as to the type and amount of insurance coverage to be considered for quotation," [2] to review the "terms, conditions and coverages of a quote and subsequent policy obtained" by Brooks for consistency with the insureds' expectations, and [3] to remit to Brooks "no less than twenty-five percent (25%) of the total premium due." (Ex. A to Brooks' Indemnification SMF at ¶¶ 3(c), 3(d), 5.)  In addition to these obligations, DeMonaco agreed to

> indemnify and hold harmless [Brooks], its affiliates,
> officers, directors, employees and/or agents, from and
> against any and all claims, actions, suits,
> proceedings, demands, assessments, judgments,
> liabilities, losses, damages, fines, penalties, fees,
> costs and expenses, including reasonable attorneys'
> fees, incurred by [Brooks] arising directly or
> indirectly from any acts, omissions or breach of [the
> Broker-Wholesale] Agreement by [DeMonaco].

(Id. at ¶ 10.)  The indemnification provision then explained that DeMonaco's "indemnification obligations ... extend to any

6

claims by an insured, purported insured, or purported additional insured or third party claiming to be a beneficiary under an insurance contract, arising out of the procurement or lack of procurement of coverage, or otherwise related to [DeMonaco's] services" under the Broker-Wholesaler Agreement.  (Id.)  In other words, the indemnification provision generally captures (or, indemnifies Brooks against) "any and all claims" related to the insurance services provided by DeMonaco under the Broker-Wholesaler Agreement.  (Id.)

**B.  Plaintiffs' Insurance Purchase with DeMonaco**

In early May of 2012, Plaintiffs requested that DeMonaco "assist them in placing [various] insurance policies to cover risks associated" with their commercial property in Sea Bright, New Jersey.[6]  (Pls.' Supp. DeMonaco SMF at ¶ 1; DeMonaco's RSMF at ¶ 1; Pls.' Supp. Brooks SMF at ¶ 1; Brooks' AOM RSMF at ¶ 1.) As specifically relevant here, on May 28, 2012, DeMonaco facilitated, with the assistance of Brooks,[7] Plaintiffs' purchase of commercial property insurance from Lloyds.  (Pls.' Supp.

---

[6] Plaintiffs purchased their commercial property in May 2008. (See Brooks' AOM SMF at ¶ 1; Pls.' Brooks AOM RSMF at ¶ 1; see also DeMonaco's SMF at ¶ 1; Pls.' DeMonaco RSMF at ¶ 1.)

[7] The parties' limited record creates the impression that Plaintiffs had no knowledge of Brooks' involvement in the procurement of their insurance policies.  (See, e.g., Pls.' Supp. Brooks SMF at ¶ 3; Brooks' RSMF at ¶ 3.)  Plaintiffs' knowledge, however, has no impact on the disposition of the pending motion.

DeMonaco SMF at ¶ 2; <u>see</u> <u>also</u> Exs. H & J to Northridge Cert.;
DeMonaco's RSMF at ¶ 2; Pls.' Supp. Brooks SMF at ¶ 2; Brooks'
RSMF at ¶ 2.)

**C. Hurricane Sandy, Litigation in this District, and the Temporary Stay**

On and around October 29, 2012, Hurricane Sandy struck the
Northeastern coast of the United States, causing widespread
damage and flooding to shore communities, like Sea Bright.  (<u>See</u>
Brooks' AOM RSMF at ¶ 5; Pls.' RSMF at ¶ 5.)  Indeed,
Plaintiff's property suffered severe flood and other damage.
(<u>See</u> Brooks' AOM RSMF at ¶ 5; Pls.' RSMF at ¶ 5; <u>see</u> <u>also</u> Compl.
at ¶ 20.)  As a result, Plaintiffs filed insurance claims with
their various carriers, including Lloyd's.  (<u>See</u> DeMonaco SMF at
¶ 5; Pls.' DeMonaco RSMF at ¶ 5.)  Nevertheless, and seemingly
unbeknownst to Plaintiffs, on October 16, 2012, Lloyd's had
cancelled Plaintiffs' insurance policy for premium nonpayment,
and denied Plaintiffs' claim for Hurricane Sandy damages.  (<u>See</u>
Compl. at ¶ 23; Brooks' AOM SMF at ¶¶ 4, 6; Pls.' Brooks RSMF at
¶¶ 4, 6.[8])

---

[8] Although Plaintiffs "[d]en[y]" the reasons underpinning Lloyd's
policy cancellation, they offer no evidence to suggest that the
cancellation decision rested upon any other <u>proffered</u> factors.
(Pl.'s Brooks RSMF at ¶¶ 4, 6.)  Rather, their claimed
disagreement with the basis for Lloyd's cancellation appears
tethered to their broader position concerning whose conduct
caused the nonpayment.  As a result, the Court finds no genuine
and/or material dispute on the <u>proffered</u> basis for Lloyd's no-
accommodation decision.

Following the denial, Plaintiff filed this action on
October 23, 2014, alleging that the various insurance Defendants
breached the insurance agreements, and claiming that DeMonaco
and Brooks breached their fiduciary duties to Plaintiffs, and
committed fraud and/or professional negligence. (See Compl. at
1-17.)

Shortly thereafter, FEMA "announced a new policy of
intensive negotiation and settlements efforts in Sandy flood
cases..." [See, e.g., Docket Item 1 in 15-mc-7000.]  As a
result, on March 13, 2015, the Court, on its own initiative,
created a "Master Docket" and entered an "**ORDER FOR TEMPORARY
STAY**," which stayed "further litigation" of Sandy flood cases,
and cancelled and postponed "all scheduled conferences,
hearings, arbitrations, mediations, and trials," so that the
parties could devote their time and attention to "settlement
efforts."[9] [Id. (emphasis in original).]  Despite placing Sandy-
related litigation in a state of suspension, the "**ORDER FOR
TEMPORARY STAY**" encouraged the parties to exchange "documents or
other evidence in aid of settlement negotiation and
consummation," and specified a procedure for parties seeking
relief from the stay (i.e., parties who wished to remain in

---

[9] In the meantime, and despite the stay, DeMonaco, Hartford,
Harleysville, and Lloyd's filed Answers to the claims and/or
crossclaims asserted in this action.  [See Docket Items 32, 33,
34, 35, & 38.]

9

active litigation).  [Id. (emphasis in original).]  During the
course of the stay, the parties here exchanged settlement-
related discovery, but sought no relief from the stay, nor
otherwise pressed the affidavit of merit issue.  (See Pls.'
Supp. DeMonaco SMF at ¶¶ 19-20; DeMonaco's RSMF at ¶¶ 19-20;
Pls.' Supp. Brooks SMF at ¶¶ 20-21; Brooks' RSMF at ¶¶ 20-21.)[10]

    After the global settlement effort proved unsuccessful in
resolving this particular litigation, the Court lifted the
temporary stay on January 21, 2016 [see Docket Item 55], and the
pending summary judgment motions followed.  [See Docket Items
60, 62, 69, 76, & 78.]  In the aftermath of Brooks' and
DeMonaco's opening briefs, Plaintiffs produced affidavits of
merit on February 22, 2016.  (See Exs. F & G to Northridge
Cert.)

### III.  STANDARD OF REVIEW APPLICABLE TO DEFENDANTS' SUMMARY JUDGMENT MOTION

    Summary judgment is appropriate if "there is no genuine
issue as to any material fact and the moving party is entitled
to judgment as a matter of law."  Alabama v. North Carolina, 560
U.S. 330, 344 (2010) (citations and internal quotation marks
omitted); see also Fed. R. Civ. P. 56(a).  Stated differently,

---

[10] Meanwhile, the Court extended the temporary stay on several
occasions, without objection, by Orders entered May 14, 2015
[Docket Item 44]; July 10, 2015 [Docket item 45]; September 18,
2015 [Docket Item 52]; and November 16, 2015 [Docket Item 53].

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the Court may grant summary judgment.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In evaluating a motion for summary judgment, the Court must view the material facts in the light most favorable to the non-moving party, and make every reasonable inference in that party's favor.  See Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).  An inference based upon "'speculation or conjecture,'" however, "'does not create a material factual dispute sufficient to defeat summary judgment.'"  Halsey, 750 F.3d at 287 (citations omitted).  Rather, the non-moving party must support each essential element with concrete record evidence.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Moreover, "[t]he standard by which the court decides a summary judgment motion does not change when the parties file cross-motions," as here.  United States v. Kramer, 644 F. Supp. 2d 479, 488 (D.N.J. 2008).  In other words, "the court must consider the motions independently and view the evidence on each motion in the light most favorable to the party opposing the motion."  Id. (citation omitted).

## IV.  DISCUSSION

The pending motions present, as explained above, two distinct issues related to Plaintiffs' compliance with the affidavit of merit requirement, and the contours of the indemnification provision between Brooks and DeMonaco.  The Court will address each issue in turn.

### A.   Extraordinary Circumstances Excuse Plaintiffs' Untimely Filing of Affidavits of Merit

In Count V, Plaintiffs allege that Brooks and DeMonaco—two licensed insurance service providers—placed themselves in a fiduciary relationship with Plaintiffs by providing "special [insurance] services and expertise," and then "negligently breached and violated their fiduciary duties and obligations," by "[f]ailing to identify and correct reimbursement and/or payment discrepancies" and "[f]ailing to resolve payment issues," among other issues.  (Compl. at 3, 7-10.)  In Counts VIII and IX, Plaintiffs then assert professional negligence and fraud claims against DeMonaco, on the grounds that DeMonaco [1] "negligently failed to process premium payments," [2] "negligently failed to provide information and/or documentation to assure that [the insurance] coverage would be maintained," and [3] fraudulently failed to make timely "premium installment" payments, despite representing to Plaintiffs that all premiums had been paid.  (Id. at 15-17.)

12

Against that backdrop, Brooks and DeMonaco advance the view that Plaintiffs' claims fall within the ambit of the affidavit of merit statute, and that Plaintiffs' failure to file timely affidavits of merit require dismissal of the claims against them.  (Brooks' AOM Br. at 3-10; Brooks' AOM Reply at 3-11; DeMonaco Br. at 3-7; DeMonaco Reply at 3-12.)  For the reasons that follow, the Court finds that extraordinary circumstances excuse Plaintiffs' noncompliance with the Affidavit of Merit statute.

In any action for property damage resulting "from an alleged act of malpractice or negligence by a licensed person in his profession or occupation," as here, the New Jersey Affidavit of Merit statute requires the plaintiff to provide "an affidavit of an appropriate licensed person" concerning whether the disputed practice or work "fell [below] acceptable professional or occupational standards.[11]"  N.J.S.A. § 2A:53A-27.  In that way, the affidavit of merit statute requires "'plaintiffs to make a threshold showing' of merit," Fontanez v. United States, 24 F. Supp. 3d 408, 411 (D.N.J. 2014) (quoting Vitale v. Carrier Clinic, Inc., 409 F. App'x 532, 533 (3d Cir. 2010) (citation

---

[11] In diversity actions, as here, the Court must apply substantive state law, including New Jersey's Affidavit of Merit statute.  See Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (explaining that the affidavit of merit statute must be applied by federal courts sitting in diversity).

omitted)), in order "'to dispose of meritless malpractice claims early in the litigation'" and "'to allow meritorious claims to move forward unhindered.'"   Snyder v. Pascack Valley Hosp., 303 F.3d 271, 274 (3d Cir. 2002) (quoting Burns v. Belafsky, 766 A.2d 1095, 1099 (N.J. 2001)).

The statute, in turn, requires the plaintiff to furnish the affidavit within no more than 120 days of the answer (following one extension for good cause),[12] and deems the failure to provide the affidavit grounds for dismissal for "failure to state a cause of action."   N.J.S.A. § 2A:53A-29 (setting forth the consequence for a plaintiff's failure to provide an affidavit of merit); see also Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C., 692 F.3d 283, 305 (3d Cir. 2012).   The record developed here contains no dispute that Plaintiffs failed to provide an affidavit of merit within the 120-day window.

Brooks filed its Answer to the Complaint on February 20, 2015 [Docket Item 27] and DeMonaco filed its Answer to the Complaint on March 24, 2015 [Docket Item 32].   Thus, in the absence of a stay, Plaintiffs' 120-day period for filing the Affidavits of Merit would have expired on or about June 20, 2015 and July 22, 2015, respectively.

---

[12] Here, the District-wide temporary stay certainly provides good cause for this initial extension.

Indeed, Plaintiffs admit that they served their Affidavits of Merit on February 22, 2016 [Docket Items 63 & 64] shortly after the opening summary judgment briefing, and nearly eight months after the technical expiration of the 120-day period provided by the Affidavit of Merit Statute. (See, e.g., Pls.' Supp. Brooks SMF at ¶¶ 22-23; Pls.' Supp. DeMonaco SMF at ¶ 22; Exs. F & G to Northridge Cert. (reproducing affidavits of merit by Armando M. Castellini).)

As a result, the issue becomes whether any one of the "four limited exceptions" excuse Plaintiffs' failure to comply with the requirements of the Affidavit of Merit Statute.  Nuveen, 692 F.3d at 305.  These exceptions include "(i) a statutory exception regarding lack of information; (ii) a 'common knowledge' exception; (iii)" an exception predicated upon "substantial compliance with the affidavit of merit requirement;" and (iv) "'extraordinary circumstances' that warrant equitable relief."  Id. (citations omitted); see also Fontanez, 24 F. Supp. 3d at 413-415 (detailing the relevant exceptions).

In this case, Plaintiffs tethers their noncompliance with the statutory requirements to the pendency of the District-wide temporary stay of "further litigation" in this and all Hurricane Sandy actions.  More specifically, Plaintiffs argue that the stay tolled the 120-day period and/or gives rise to

15

extraordinary circumstances that excuse Plaintiffs' failure to comply with the statute.[13]  (See Pls.' Brooks Opp'n at 12-35; Pls.' DeMonaco Opp'n at 12-35.)  In considering these positions, the Court finds Plaintiffs' position on tolling initially appealing, because the District-wide stay halted "further litigation" and dispensed with filing deadlines (among other things), so the parties could devote their attention to intensive settlement efforts.  [Docket Item 1 in Miscellaneous Action No. 15-700.]  In that way, the District-wide stay left Plaintiffs (as argued by counsel) with the understandable impression that they had been relieved from an array of filing obligations—including, potentially, the statutory affidavit of merit requirement.  On that issue, though, the Court finds equally plausible the notion that the District-wide stay could not, as a matter of law, have allowed litigants to sidestep the

---

[13] In addition, Plaintiffs argue that the nature of their claims fall within the "common knowledge" exception to the Affidavit of Merit statute.  (See Pls.' Brooks Opp'n at 12-16; Pls.' DeMonaco Opp'n at 12-16.)  The "common knowledge" exception only applies "where 'jurors' common knowledge'" suffices "'to enable [the jurors], using ordinary understanding and experience, to determine a defendant's [malpractice or] negligence without the benefit of the specialized knowledge of experts.'" Hubbard v. Reed, 774 A.2d 495, 499 (N.J. 2001) (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 734 A.2d 778 (1999)).  The malfeasance alleged here, however, falls short of being mundane or commonplace, particularly to the extent Plaintiffs' claims will require an inquiry into the relevant standard of care for insurance professionals.  The Court therefore rejects Plaintiffs' position on the application of the common knowledge exception.

statutory filing requirements of the Affidavit of Merit statute-
an issue well highlighted by Brooks and DeMonaco in their
briefing.  (See, e.g., Brooks' AOM Reply at 2-4; DeMonaco's AOM
Reply at 9-10.)

Nevertheless, the Court need not definitively decide the
question of tolling, because the pendency of the stay of
"further litigation" plainly constitutes an "extraordinary
circumstance."  Chamberlain, 210 F.3d at 162 (citation omitted)
(explaining that "extraordinary circumstances" may justify
noncompliance, provided that the circumstances do not evince
"'mere carelessness or lack of proper diligence'").  Indeed, in
Hyman Zamft & Manard, L.L.C. v. Cornell, 707 A.2d 1068 (N.J.
Super. Ct. App. Div. 1998), the New Jersey Appellate Division
found, under procedural circumstances that closely resemble
those presented here, that a "stay on all proceedings" for
mediation "excused the untimely filing of the affidavits of
merit in response to the original pleadings," because the
"mediation stay" imposed a "time-out" on further litigation.
Id. at 1072.  Here too, the District-wide stay temporarily
froze-in-time this action, and all Hurricane Sandy actions, to
allow the parties to engage in settlement efforts, and no party
ever sought relief from the stay.  Aside from that circumstance,
Plaintiffs served their affidavits on February 22, 2016, thirty-
two days after the Court lifted the stay.  (See Exs. C, F, & G

17

to Northridge Cert.)[14]  These interlocking factors, in turn and taken together, demonstrate extraordinary circumstances to excuse Plaintiffs' untimely filing of their affidavits of merit. See Hyman Zamft & Manard, L.L.C., 707 A.2d at 1072 (finding a stay sufficient to constitute extraordinary circumstances); Seery v. United States, No. 98-671, 2001 WL 34368387, at *2 (D. Del. May 1, 2001) (citations omitted) (explaining that New Jersey courts have found "'extraordinary circumstances'" in connection with a stay "on all proceedings during mediation").

For all of these reasons, the Court holds that the time during which this case was temporarily stayed for purposes of intensive settlement efforts is excluded as an extraordinary circumstance from the 120-day period for serving the Affidavits of Merit, rendering Plaintiffs' Affidavits herein timely.  The summary judgment motions by Brooks and DeMonaco will be denied, and Plaintiffs' cross-motions will be granted to the extent the Court finds that extraordinary circumstances excuse Plaintiffs'

---

[14] The Affidavit of Merit clock started ticking as to Brooks on February 20, 2015 and was temporarily stayed on March 13, 2015 upon entry of the Order for Temporary Stay; the clock resumed when the stay was lifted on January 21, 2016 and it ran for 32 days until the affidavit was filed on February 22, 2016; thus, extending the stay period, Plaintiffs' affidavit as to Brooks was served within 21 days plus 32 days, or a total of 53 days, well within the 120-day period.  As to DeMonaco, the case was stayed when DeMonaco filed its answer, and a period of only 32 days elapsed from when the stay was lifted until Plaintiffs' affidavit was served.

untimely filing of affidavits of merit.  The Court next addresses the separate contractual indemnification claims of Brooks and DeMonaco

**B.   Cross-Claims for Contractual Indemnification**

In Count II of its cross-claims against DeMonaco, Brooks points to the indemnification provision of the Broker-Wholesaler Agreement, and asserts that the provision entitles it to "defense and indemnification from DeMonaco" against Plaintiffs' claims.  (Brooks' cross-claim at 15.)  DeMonaco asserts in its own cross-claim, by contrast, that "Brooks agreed to hold harmless and indemnify DeMonaco" against any recovery by Plaintiffs.  (DeMonaco's cross-claim at 15.)  In other words, these parties advance diametrically opposed views on the scope of the indemnification provision, and Brooks now seeks summary judgment in its favor on DeMonaco's cross-claim, as well as its own affirmative claim for contractual indemnification.

In resolving these competing positions, the Court begins, as it must, with the terms of the indemnification provision:

> **Indemnification.**  [DeMonaco] shall indemnify and hold harmless [Brooks], its affiliates, officers, directors, employees and/or agents, from and against any and all claims, actions, suits, proceedings, demands, assessments, judgments, liabilities, losses, damages, fines, penalties, fees, costs and expenses, including reasonable attorneys' fees, incurred by [Brooks] arising directly or indirectly from any acts, omissions or breach of [the Broker-Wholesale] Agreement by [DeMonaco].  [DeMonaco's] indemnification obligations under this [provision], extend to any

19

> claims by an insured, purported insured, or purported
> additional insured or third party claiming to be a
> beneficiary under an insurance contract, arising out
> of the procurement or lack of procurement of coverage,
> or otherwise related to [DeMonaco's] services
> hereunder.

(Ex. A to Brooks' Indemnification SMF at ¶ 11 (emphasis added).)
In other words, the indemnification provision speaks,
exclusively, in terms of DeMonaco's indemnification obligations.
Stated differently, the terms of the provision make plain that
the right to indemnification runs only to Brooks, and the
unequivocal language offers no basis, as a matter of law, to
find DeMonaco entitled to contractual indemnification in its own
right.  For that reason alone, Brooks' summary judgment motion
will be granted to the extent it concerns DeMonaco's claim for
contractual indemnification, because no reasonable factfinder
could find DeMonaco entitled to contractual indemnification in
any form.[15]

    Brooks' entitlement to summary judgment on its own
contractual indemnification claim, however, presents a more
nuanced and ultimately premature question at this stage of the
proceedings.  Critically, under New York law,[16] the right to

---

[15] In its briefing, DeMonaco offered no substantive response to
Brooks' position on its cross-claim for contractual
indemnification, and turned its attention instead only to
Brooks' claim for contractual indemnification.
[16] Because the Broker-Wholesale Agreement contains a choice-of-
law provision, the parties appear to substantively agree that
New York law governs the question of contractual interpretation.

contractual indemnification depends upon the specific language of the contract, and "'contracts will not be construed to indemnify a person against [its] own negligence'" absent an "'unequivocal'" expression of such intention.  Sovereign Bank v. Biagioni, 982 N.Y.S.2d 322, 322 (N.Y. App. Div. 2014).

In this case, Brooks claims entitlement to indemnification on Plaintiffs' claim for breach of fiduciary duty, based upon the provision's inclusion of sweeping language like "arising out of" and "any and all claims." (Brooks' Indemnification Br. at 7-9; Brooks' Indemnification Reply at 3-8.) In advancing that position, however, Brooks ignores the fact that the indemnification provision speaks only of acts and/or omissions by DeMonaco. (See Ex. A to Brooks' Indemnification SMF at ¶ 11.) More specifically, the indemnification explains, on its face, that DeMonaco shall indemnify Brooks "from and against any and all claims ... arising directly or indirectly from acts [or] omissions" by DeMonaco, and for claims "arising out of the procurement or lack of procurement of coverage, or otherwise related to [DeMonaco's] services" under the Broker-Wholesaler Agreement. (Id. (emphasis added).) In that way, the provision appears to capture primarily, if not exclusively, claims related to DeMonaco's conduct, and not any independent (or, potentially negligent) acts by Brooks. (See id.) In their fiduciary duty claim, however, Plaintiffs allege that Brooks owed Plaintiffs

fiduciary obligations <u>independent</u> from DeMonaco, and breached
those obligations through acts <u>unconnected</u> to and <u>separate</u> from
DeMonaco.  (<u>See</u> Compl. at 7-10.)  In other words, Plaintiffs'
allegations extend far beyond the narrow contours of the
indemnification provision.

Nevertheless, because discovery remains in its early
phases, it remains unclear if Brooks owed Plaintiffs a fiduciary
duty, and if so, whether Brooks breached that duty from its own
acts (in which case its right to indemnification might be
questioned), rather than solely through those of DeMonaco (in
which case the claims would fall within the ambit of the
unambiguous indemnification provision).  Indeed, as is evident
from the parties' submissions, the precise contours of Brooks'
alleged conduct remains a matter of ongoing discovery.  As a
result, the Court cannot at this time find Brooks entitled to
judgment as a matter of law on its claim for contractual
indemnification.[17]  Brooks may, however, renew its
indemnification position at the conclusion of pre-trial factual
discovery and in connection with the parties' dispositive motion

_____

[17] Beyond that, "a claim for contractual indemnification only
accrues once the indemnitee has suffered a loss, i.e., made a
payment, <u>Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.</u>, 762
F.3d 165, 188 (2d Cir. 2014), and no such payment has been made
here.  Nor has Brooks argued that the indemnification provision
entitles it to payment of ongoing defense costs.  <u>See</u> <u>id.</u>

practice, or following a judgment or verdict in favor of Plaintiffs.

## V.    CONCLUSION

For the reasons explained above, Brooks' motion for summary judgment on Plaintiffs' claim for breach of fiduciary duty and DeMonaco's motion for summary judgment on Plaintiffs' claims for breach of fiduciary duty, professional negligence, and fraud will be denied, and Plaintiffs' related cross-motions for summary judgment will be granted.  Brooks' motion for summary judgment on the contractual indemnity claims and cross-claims will, in turn, be granted in part and denied without prejudice. An accompanying Order will be entered.


**August 2, 2016**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      Chief U.S. District Judge